PEOPLE v STARK

1. CRIMINAL LAW—CONSTITUTIONAL LAW—DUE PROCESS—EVIDENCE—
   SUPPRESSION OF EVIDENCE—EVIDENCE FAVORABLE TO ACCUSED—
   MATERIAL EVIDENCE—GOOD FAITH OF PROSECUTOR.

   It is a violation of due process for the prosecution to suppress
   evidence which has been requested by an accused, irrespective
   of the good faith or bad faith of the prosecutor, where the
   evidence is favorable to the accused and where the evidence is
   material either to the accused's guilt or to his punishment.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—DUE PROCESS—EVIDENCE—
   DISCLOSURE OF EVIDENCE BY PROSECUTOR—MATERIAL EVIDENCE.

   The due process requirement that the prosecution disclose all
   material evidence which may be favorable to an accused ap-
   plies to evidence which might lead a jury to entertain a
   reasonable doubt about a defendant's guilt and this test should
   be liberally construed whenever there is substantial room for
   doubt as to the effect disclosure might have.

3. CRIMINAL LAW—EVIDENCE—BREATHALYZER—MATERIAL EVIDENCE—
   CREDIBILITY OF EVIDENCE—DRIVING WHILE INTOXICATED.

   The results of a Breathalyzer test by their very nature constitute
   material evidence on the issue of guilt or innocence of a
   defendant charged with drunk driving; therefore, evidence
   substantially affecting the credibility of the results of the test
   would appear to be material and the suppression of such
   evidence would deny the defendant a fair trial.

4. CRIMINAL LAW—EVIDENCE—BREATHALYZER—DRIVING WHILE IN-
   TOXICATED—DISCLOSURE OF EVIDENCE—ISSUE OF GUILT OR INNO-
   CENCE.

   A test ampoule and its contents and a reference ampoule used in
   conducting a Breathalyzer test on a defendant charged with

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur 2d, Constitutional Law § 579.
[3–7] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260, 332–
    334.
    Admissibility and weight of evidence based on scientific test for
    intoxication or presence of alcohol in system. 159 ALR 209.

drunk driving must be disclosed as evidence if there is a reasonable possibility that these items would constitute favorable evidence on the issue of the defendant's guilt or innocence.

5. AUTOMOBILES—DRIVING WHILE INTOXICATED—TESTING FOR INTOXICATION—INDEPENDENT TEST—STATUTES.

A state should not be forced to afford a defendant charged with drunk driving a second chance to test the workability of the machine used for testing the defendant's level of intoxication where the defendant has the opportunity under a statute to an independent test (MCLA 257.625a[3]; MSA 9.2325[1][3]).

6. EVIDENCE—BREATHALYZER—BLOOD ALCOHOL CONTENT—RELIABILITY OF BREATHALYZER.

The Breathalyzer has been determined to be a scientifically reliable and accurate device for measuring blood alcohol content.

7. CRIMINAL LAW—EVIDENCE—BREATHALYZER—DRIVING WHILE INTOXICATED—EXPERT TESTIMONY—BREATHALYZER AMPOULES.

The ampoules used in conducting a Breathalyzer test of a defendant accused of drunk driving were not material evidence at the defendant's trial where there was expert testimony at trial as to the minute chances of an inaccurate Breathalyzer test result due to an ampoule irregularity when the test was done by a competent operator and where the defendant waited 72 days to request the production of the used ampoules and the defendant's own expert witness testified that the used ampoules were of little value after 30 days.

Appeal from Allegan, George R. Corsiglia, J. Submitted October 28, 1976, at Lansing. (Docket No. 25182.) Decided January 17, 1977.

Robert L. Stark was convicted of driving under the influence of intoxicating liquors. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Fred R. Hunter, III,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Thomas C. Nelson,* Assistant Attorney General, of counsel), for the people.

*Kelly & Oole,* for defendant.

Before: Quinn, P. J., and R. B. Burns and M. F. Cavanagh, JJ.

R. B. Burns, J. This appeal presents an issue of first impression in this jurisdiction:

"Subsequent to the administration of a Breathalyzer test, does the routine practice, on the part of law enforcement officials, of discarding the non-reusable ampoules used in the test constitute a constitutionally impermissible suppression of evidence violative of due process of law?"

Defendant contends that the answer to this question is "yes", thus necessitating reversal of his third (felony) conviction of driving under the influence of intoxicating liquor. MCLA 257.625; MSA 9.2325. We disagree, and affirm the conviction.

A clear description of the operation of the Breathalyzer is given by the California Supreme Court in *People v Hitch,* 12 Cal 3d 641, 644; 117 Cal Rptr 9, 11; 527 P2d 361, 363 (1974):

"The breathalyzer used in the test is an electrically powered apparatus designed to calculate the extent of alcohol in the suspect's circulatory system. The suspect blows into a tube and a sample of his breath is trapped inside the machine. The trapped sample is then permitted to bubble through a glass test ampoule containing three cubic centimeters of 0.025 percent potassium dichromate in a 50-percent-by-volume sulphuric acid solution which acts as a reagent to any alcohol suspended upon the suspect's breath. If alcohol is present in the sample, it produces a change in the color and the light transmissibility of the solution. Upon the passage of a light beam through the test ampoule, the relative light transmissibility of the solution is registered on a meter which calculates the percent of alcohol in the suspect's blood.

"The machine is calibrated so as to provide a reading

by establishing a correlation between the test ampoule and a reference ampoule which is identical in specification."

Defendant-appellant Stark underwent two such tests upon his arrest, the results of which were .22 and .21 (percent by weight of alcohol in the blood) respectively. A level of .10 gives rise to the presumption of intoxication under MCLA 257.625a; MSA 9.2325(1).

Defendant's due process argument is based on *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and on *Hitch, supra. Brady* enunciated the basic rule regarding criminal discovery and due process as follows:

"We now hold that the suppression by the prosecution of evidence *favorable* to an accused upon request violates due process where the evidence is *material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 US at 87; 83 S Ct at 1196–1197; 10 L Ed 2d at 218. (Emphasis added.)

This due process requirement of disclosure applies to evidence which might lead a jury to entertain a reasonable doubt about a defendant's guilt, *Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972), and the test should be "liberally construed" whenever there is substantial room for doubt as to the effect disclosure might have. *People v Eddington,* 53 Mich App 200, 206; 218 NW2d 831, 834 (1974).

The relevance of the critical concepts of materiality and favorability in the context of the Breathalyzer was elaborated upon by the court in *Hitch.* As to materiality:

"[T]he *results* of the breathalyzer test by their very

nature constitute material evidence on the issue of guilt or innocence upon a charge of drunk driving. * * * Thus * * * evidence substantially affecting the credibility [e.g., the test ampoules] of the *results* of the test would appear to be material and the suppression of such evidence would deny defendant a fair trial." 12 Cal 3d at 647; 117 Cal Rptr at 13–14; 527 P2d at 365– 366. (Emphasis in original.)

As to favorability:

"[W]e are of the view that if, given the availability of the test ampoule and its contents, and the reference ampoule, there is a *reasonable possibility* that they would constitute favorable evidence on the issue of guilt or innocence, then such evidence must be disclosed." 12 Cal 3d at 649; 117 Cal Rptr at 15; 527 P2d at 367. (Emphasis added.)

The *Hitch* court then concluded that the findings of the lower court in that case were to the effect that preservation of the ampoules would yield a "reasonable possibility" that they might "impeach the accuracy and credibility of the results of the test", 12 Cal 3d at 649; 117 Cal Rptr at 15; 527 P2d at 367. The court then concurred with *United States v Bryant,* 142 US App DC 132, 141; 439 F2d 642, 651 (1971), that "the duty of disclosure is operative as a duty of preservation", and held (prospectively), that "intentional but nonmalicious" destruction of the Breathalyzer ampoules would require that the results of the Breathalyzer test be excluded from evidence.

Defendant argues that the application of *Brady* enunciated by the California Supreme Court in *Hitch* should be adopted by this Court. However, other states have rejected *Hitch.*

In *State v Bryan,* 133 NJ Super 369, 374; 336 A2d 511, 514 (1974), the Superior Court of New

Jersey concluded that "[t]he State should not be forced to afford the defendant a second chance to check the workability of the machine when defendant has the opportunity under [the statute] to an independent test". Such an independent test is expressly provided for by MCLA 257.625a(3); MSA 9.2325(1)(3). This opportunity, which defendant did not exercise, renders his assertion of a due process violation less than persuasive. We are also cognizant that this defendant did in fact have two Breathalyzer tests (with different ampoules) with virtually identical results.

Both the Legislature and the courts of this state have determined the Breathalyzer to be a scientifically reliable device accurate for measuring blood alcohol content. *People v Kozar,* 54 Mich App 503; 221 NW2d 170 (1974). In this regard, the opinion of the Oklahoma Court of Criminal Appeals in *Edwards v State,* 544 P2d 60 (1975), demonstrates the thrust and effect of defendant's reasoning:

"[W]e are not convinced as was the California court in *Hitch* that the evidence here in question [the ampoules] is actually material with respect to the issue of the guilt or innocence of the defendant. True, * * * we cannot do other than accept defendant's contention that the results of the breathalyzer test would constitute material evidence with a direct bearing upon defendant's guilt or innocence. [Citation omitted.] This is not to suggest, however, that a similar significance would automatically attach to each component in the breathalyzer machine simply because it contributes to the normal operation of the instrument. To adopt this line of reasoning would have the desired effect of exposing to continuous question any mechanical device or scientific method used by law enforcement officials in the performance of their duties." 544 P2d at 62.

The Court concluded:

"Defendant's objection goes more properly to the weight to be assigned the test result in the lower court's evaluation of the facts as presented, than to its admissibility, given the strict adherence here in evidence to the rules and procedures established by the Board for the conduct of such examinations." 544 P2d at 64.

The trial court in our case took extensive testimony on the attributes of the ampoules and on the accuracy of the Breathalyzer test. Defendant's own expert testified that only 2% of the 200 ampoule retestings that he had conducted revealed a significant variation in result. Plaintiff's expert, Dr. Edgar W. Kievela, systematically refuted this testimony to indicate that the chances of an inaccurate Breathalyzer result due to ampoule irregularity are minute upon testing by a competent operator. Dr. Kievela also testified as to the guarantees of accuracy gained from Michigan's ampoule spot-check system similar to that affirmed as sufficient in *State v Bryan, supra.*

The trial court found as a fact that in this case the ampoules would not be material evidence. The defendant waited 72 days to request the production of the used ampoules. Defendant's own expert testified that the used ampoules were of little value after 30 days.

We agree with the trial court that in this case the production of the ampoules when requested would not be material evidence.

Affirmed.