PEOPLE v FLORINCHI

Docket No. 27855. Submitted December 14, 1977, at Lansing.—Decided June 19, 1978. Leave to appeal applied for.

Timothy L. Florinchi was convicted of second-degree murder, Shiawassee Circuit Court, Peter J. Marutiak, J. The defendant's pretrial motion for discovery of all reports of named police officers and of all laboratory reports had been denied, based on the prosecutor's representations that all such reports had been furnished to defense counsel. The defendant appeals alleging that all reports had not been furnished and that the trial judge abused his discretion in denying a motion for a change of venue. *Held:*

The prosecutor did not fulfill his duty to see that justice was done by failing to furnish to the defense certain tip sheets which might have produced evidence leading the jury to entertain a reasonable doubt as to the defendant's guilt. There was no abuse of discretion in denying the motion for change of venue.

Reversed and remanded.

V. J. BRENNAN, P. J., dissented. He would hold that the internal police "tip sheets" were not subject to discovery and would affirm the conviction.

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 7] 21 Am Jur 2d, Criminal Law §§ 225, 328.

29 Am Jur 2d, Evidence §§ 771, 842 *et seq.*

Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.

Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.

[2] 23 Am Jur 2d, Depositions and Discovery § 307 *et seq.*

[4] 63 Am Jur 2d, Prosecuting Attorneys §§ 26, 27.

[6] 77 Am Jur 2d, Venue §§ 58–60, 79, 84.

Construction and effect of statutory provision for change of venue for the promotion of the convenience of witnesses and the ends of justice. 74 ALR2d 16.

Change of venue: pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—PRODUCTION OF EVIDENCE—ISSUE OF GUILT—CONTROL OF PROSECUTOR—WITNESSES—IMPEACHMENT.

A defendant is entitled to have produced at trial all the evidence bearing on his guilt or innocence which is within the control of the prosecutor, including prior statements of witnesses which may be used for impeachment.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—DUE PROCESS—PRETRIAL DISCOVERY—PREPARATION OF DEFENSE.

Considerations of due process and fairness require that a defendant be allowed pretrial discovery of any information necessary to the preparation of the defense; suppression by the prosecutor of evidence favorable to an accused is a violation of due process.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—DUE PROCESS—EVIDENCE— DISCLOSURE OF EVIDENCE BY PROSECUTOR—MATERIAL EVIDENCE.

The due process requirement that the prosecution disclose all material evidence which may be favorable to an accused applies to evidence which might lead a jury to entertain a reasonable doubt about a defendant's guilt and this test should be liberally construed whenever there is substantial room for doubt as to the effect disclosure might have.

4. CRIMINAL LAW—JUSTICE—PROSECUTOR'S DUTY.

A prosecutor has a duty to see that justice is done, not merely to convict.

5. CRIMINAL LAW—DISCOVERY—POLICE REPORTS—PROSECUTOR'S DUTY.

A prosecutor, once he represented to the trial court that he would furnish a defendant with all police reports, became bound, in the interest of fundamental fairness and in view of his duty to see justice done, to place a broad interpretation on the term "police reports" and to err on the side of giving away too much rather than too little; a prosecutor is not free to avoid a discovery order by agreeing to voluntary discovery and then arguing that the defendant is not entitled to discovery or that materials within his control are not covered by the agreement because they are denominated "tip sheets" rather than police reports.

6. VENUE—MOTIONS—DISCRETION—ABUSE OF DISCRETION—PRETRIAL PUBLICITY—BURDEN OF PROOF.

A motion for a change of venue is addressed to the discretion of the trial court, and the trial court's decision will not be set aside absent a clear showing of abuse of discretion; the burden of establishing that prospective jurors have been influenced by pretrial publicity is on the party seeking the change of venue,

and merely showing that jurors have been exposed to pretrial publicity is not sufficient in itself.

Dissent by V. J. Brennan, P. J.

7. Criminal Law—Witnesses—Res Gestae Witnesses—Discovery— Tip Sheets—Police Reports.

Witnesses who were not part of the res gestae of a crime are not required to be indorsed or produced by the prosecutor, and internal police "tip sheets" are not subject to discovery by a defendant as official police reports.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald D. Lostracco,* Prosecuting Attorney, for the people.

*F. Martin Tieber,* Assistant State Appellate Defender, for defendant on appeal.

Before: V. J. Brennan, P. J., and D. F. Walsh and H. L. Heading,* JJ.

H. L. Heading, J. Defendant was convicted by a jury of second-degree murder, MCL 750.317, MSA 28.549, and was sentenced to a term of 15 to 25 years imprisonment. He appeals as of right, alleging several errors in the proceedings below.

Defendant was charged with the murder of one Jack Vincent, whose body was found near his muddy and blood-bespattered automobile in Rosevear Park in Owosso on the morning of April 13, 1975. Death apparently resulted either from multiple stab wounds to the chest and back, caused by a large knife, or from crushing of the chest and pelvis, possibly the result of having been run over by an automobile. The muddy area in which the body was found bore numerous automobile tire tracks, and blood of the same type as that of the

---

`* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

victim was found on the front bumper and right front fender of the victim's automobile.

In the victim's automobile were found a jacket containing a small amount of money, the victim's wallet, and a hunting knife identified as belonging to the victim and stained with blood of the same type as that of the victim. Also found in the mud near the body was a .38-caliber revolver similar to one seen in the possession of the victim on the evening before the body was discovered. Defendant's fingerprints were found in the victim's automobile, on both the inside and outside of both car doors.

Rebecca Daniels testified that she danced with defendant at a local bar shortly after midnight on April 13, and accompanied him to a table where the victim was sitting, where defendant attempted to enlist her aid in obtaining money from the victim. She also testified that the victim asked her to marry him. She testified that the victim offered to sell defendant something and that the two men went outside to look at the object for sale, at which time she left the table to join other friends.

Defendant testified that he had been in the company of the victim and Miss Daniels, but denied having said he wanted to get money from the victim. He testified that the victim offered to sell him a gun, and that they went to the victim's automobile to see it, both men entering through the left door. He testified that when the bar closed, the victim offered him a ride, which he accepted. At that time he entered the automobile through the right side door. According to the defendant, the victim drove him to another bar, where they parted company. The bar being closed, defendant walked home.

The remaining evidence linking defendant with

the crime consisted of testimony of two women, both under sentence for heroin possession or sale, that defendant told them a few days after the murder that he had stabbed the victim after the victim made sexual advances to him. Defendant admitted having said he killed Vincent, but maintained that the remark was only a joke.

Other testimony at trial revealed that the victim had been in another local bar earlier on the evening before his death, where he offered to sell a pistol to the bartender and several customers. He also asked a woman patron, one Patricia Shane, to go out with him and to marry him, actions which displeased Ms. Shane's boyfriend.

There was also evidence that the victim was engaged in a close relationship with one Carolyn Donlan, a relationship of which Mrs. Donlan's husband had recently become aware. The victim had in fact called Mrs. Donlan and arranged to meet her early in the evening, but failed to keep the appointment. The defense called two witnesses who testified that the victim had on two occasions told them that he carried a weapon in anticipation of a fight with Mrs. Donlan's husband, an encounter which he expected only one of them to survive.

Prior to trial, defendant filed a motion for discovery of all reports of named police officers and all laboratory reports. The motion was denied by the court on the basis of representations by the prosecutor that he had furnished all such reports to defense counsel.

At trial, it soon became evident that there existed police reports which had not been furnished to defense counsel. Most notably, it was revealed during cross-examination of Detective Bart Barnes that defense counsel had not been furnished certain documents, known as tip sheets, on which the

police recorded information received from informants which was in some way connected to the investigation of the case. Among the tips received by the police and recorded on tip sheets were: 1) a threat allegedly made against decedent by a man brandishing a knife, on April 11, 1975; 2) an incident in which the victim told acquaintances that he expected to have a run-in with his girlfriend's husband; 3) a statement by a citizen that he had seen the victim's automobile turn off its lights and run a red light at approximately 1:45 a.m. on April 13, 1975; and 4) a report that certain named individuals had been in the park where the body was found during the night of the murder. Some of the persons revealed in the report as possible witnesses were presented as defense witnesses later in the trial. Others, however, were unavailable as witnesses, by reason of having left the state.

It has long been the law in this state that a defendant is entitled to have produced at trial all the evidence bearing on his guilt or innocence which is within the control of the prosecutor, including prior statements of witnesses which may be used for impeachment, *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933), *People v Davis,* 52 Mich 569; 18 NW 362 (1884).

The right to pretrial discovery in criminal matters, however, is of more recent origin. At common law, defendant had no right to discover any evidence held by the prosecutor, *People v Johnson,* 356 Mich 619; 97 NW2d 739 (1959). Considerations of due process and fundamental fairness, however, led the courts to develop a rule that pretrial discovery of things admissible in evidence was a matter within the sound discretion of the trial court, *People v Johnson, supra, People v Mara-*

*nian,* 359 Mich 361; 102 NW2d 568 (1960). Recent cases have recognized that discovery is not necessarily limited to evidence admissible at trial, but may extend to any information necessary to the preparation of the defense, *People v Walton,* 71 Mich App 478; 247 NW2d 378 (1976).

The United States Supreme Court in *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), held that suppression by the prosecutor of evidence favorable to an accused is a violation of due process. Discussing the limits of the prosecutor's duty, this Court said in *People v Eddington,* 53 Mich App 200, 206; 218 NW2d 831 (1974):

"While hindsight eases appellate courts' judgments as to what is favorable evidence, neither prosecution, defense, nor trial judges are so blessed. Favorable evidence is elsewhere defined as all 'evidence which * * * might have led the jury to entertain a reasonable doubt about * * * guilt'. *Levin v Katzenbach,* 124 US App DC 158, 162; 363 F2d 287, 291 (1966). The test should be liberally construed especially when 'substantial room for doubt' exists as to the effect disclosure might have. *United States v Bryant,* 142 US App DC 132, 138; 439 F2d 642, 648 (1971)."

Accord, *People v Stark,* 73 Mich App 332; 251 NW2d 574 (1977).

In the case now before us, defendant's motion for discovery was denied by the trial court in an order which noted that the prosecutor had assured the court that all police reports had already been turned over to the defense. Thus, technically, the prosecutor was under no compulsion to afford defense counsel access to potentially favorable evidence prior to trial.

The prosecutor argues that tip sheets are not police reports and, further, that defendant has no

right to discovery. However, the prosecutor has a duty to see that justice is done, not merely to convict, *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971). Once the prosecutor represented to the trial court that he would furnish defendant with all police reports, he became bound, in the interest of fundamental fairness and in view of his duty to see justice done, to place a broad interpretation on the term "police reports", and to err on the side of giving away too much rather than too little. He is not free, as he did here, to avoid a discovery order by agreeing to voluntary discovery, then to argue that defendant is not entitled to discovery or that materials within his control are not covered by the agreement because they are denominated "tip sheets" rather than police reports.

Defendant next contends that the trial court erred in denying his motion for a change of venue. Such a motion is addressed to the discretion of the trial court, and its decision will not be set aside absent a clear showing of abuse of discretion, *People v Ranes,* 63 Mich App 498; 234 NW2d 673 (1975). The burden of establishing that prospective jurors have been influenced by pretrial publicity is on the party seeking the change of venue, and merely showing that jurors have been exposed to pretrial publicity is not in itself sufficient, *People v Stockard,* 48 Mich App 680; 211 NW2d 62 (1973), aff'd, 391 Mich 481; 219 NW2d 68 (1974), *People v Moore,* 51 Mich App 48; 214 NW2d 548 (1974).

The record does not reveal any abuse of discretion in the denial of a change of venue. Pretrial publicity, although extensive, was not inflammatory or biased, *People v Garland,* 44 Mich App 243; 205 NW2d 195 (1972), *rev'd other grounds,* 393 Mich 215; 224 NW2d 45 (1974). Moreover, exten-

sive voir dire revealed only five jurors who had knowledge about the case.

Defendant has failed to preserve his claim of error regarding improper rebuttal testimony of a police officer by timely objection at trial. Defendant's other claims of error are without merit.

Reversed and remanded for a new trial.

D. F. Walsh, J., concurred.

V. J. Brennan, P. J. *(dissenting)*. I concur in my brother Heading's opinion on all issues except that pertaining to the prosecutor's failure to disclose all records and witnesses to defense counsel prior to trial.

The trial court ordered the prosecution to submit a complete list of witnesses as well as all the admissible police reports to defendant. To the best of its ability, the prosecution did so. I would only note that I share the prosecution's position that witnesses who were not a part of the res gestae of the crime are not required to be endorsed or produced by the prosecution and that internal police "tip sheets" are not discoverable as official "police reports". See, regarding res gestae witnesses, *People v Harrison,* 44 Mich App 578, 585–586; 205 NW2d 900 (1973). See, regarding internal departmental police "tip sheets", *People v Walton,* 71 Mich App 478, 485; 247 NW2d 378 (1976).

Beyond these matters, the trial court also ordered a private investigation to be conducted by an investigator hired by defendant and paid by Shiawassee County. This investigation occurred and provided defendant valuable information. Generally, in fact, defendant was given wide latitude in regard to all he requested.

Defendant was allowed to develop completely his

theories of the case. Because of extensive cross-examination by defense counsel, the jury knew the entire background of every prosecution witness. Defense counsel and the prosecution delved thoroughly into the previous police records of witnesses. Through defense counsel's able and extensive cross-examination, any potential advantage to be gained by a witness's testifying against defendant was exposed.

In short, defense counsel obtained every advantage for his client which a very strong prosecution, admittedly based on circumstantial evidence, would permit. I thus find no error in the trial court's consideration and handling of this case. I would vote to affirm defendant's conviction.