PEOPLE *v.* RANES.

Opinion of the Court.

1. Criminal Law—Assistance of Counsel—Waiver.

Defendant, who surrendered himself to police in 1964 and volunteered that he had killed a man, and was offered assistance of counsel which he declined, *held,* to have intelligently and voluntarily waived his right to an attorney before proceeding with his confession, where assistant prosecutor arranged for 2 psychiatrists to examine him who extracted incriminating statements from him, since the stricter demands placed on waiver of counsel by subsequent decisions of the United States Supreme Court do not apply retroactively (US Const, Am 6).

2. Same—Compulsion of Defendant to be a Witness Against Himself.

Defendant who knew of his right to remain silent and who voluntarily gave self-incriminating statements to 2 psychiatrists who examined him at the request of assistant prosecutor, after defendant surrendered himself and volunteered that he had killed a man, *held,* not to have been forced to be a witness against himself when the psychiatrists testified as to defendant's self-incriminating statements, since expert medical opinion is essential for both defendant and the people where defendant asserts the defense of mental incapacity to perform a crime and since there was no evidence of any adverse testimonial compulsion (US Const, Am 5).

Dissenting Opinion.

T. G. Kavanagh, J.

3. Criminal Law—Assistance of Counsel—Compulsion of Defendant to be a Witness Against Himself—Fair Trial.

*Denial of the right to the assistance of counsel to defendant accused of crime and compulsion to incriminate himself is a deprivation of a fair trial (US Const, Ams 5, 6).*

References for Points in Headnotes

[1, 3–6] 29 Am Jur 2d, Evidence § 555 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 365.

4. Same—Assistance of Counsel—Compulsion of Defendant to be a Witness Against Himself.

　Denial of a request for a lawyer by defendant accused of crime is a denial of assistance of counsel and any incriminating statements made by him are deemed to be coerced so that they may not be used against him at trial (US Const, Ams 5, 6).

5. Same—Compulsion of Defendant to be a Witness Against Himself.

　Communications of defendant to 2 psychiatrists were testimonial and therefore protected by the right of defendant not to be made a witness against himself, where after defendant surrendered to police and volunteered that he had killed a man, an assistant prosecutor arranged for the psychiatrists to examine defendant, defendant asked for counsel but was examined by the psychiatrists before counsel could be appointed, and he incriminated himself by his statements to the psychiatrists (US Const, Am 5).

6. Same—Compulsion of Defendant to be a Witness Against Himself.

　Conviction of defendant, who surrendered himself to police and who volunteered that he had killed a man, should be reversed and the case remanded for new trial, where incriminating statements were extracted from defendant by 2 psychiatrists who had examined him at the request of assistant prosecutor before defendant was represented by counsel.

Appeal from Kalamazoo, Fox (Raymond W.), J. Submitted Division 3 October 6, 1966, at Grand Rapids. (Docket No. 329.) Decided September 4, 1968. Leave to appeal granted by Supreme Court December 12, 1968. 381 Mich 793.

Larry Lee Ranes was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General and *Donald A. Burge,* Prosecuting Attorney, for the people.

*Eugene Field,* for defendant.

FITZGERALD, J. This is an appeal from a conviction of first-degree murder.[1]

The defendant surrendered himself to the Kalamazoo police about midnight June 4, 1964, and volunteered that he was the killer of Gary Smock, the discovery of whose body had precipitated an intense manhunt for his slayer.

A magistrate was summoned promptly to the police station and the defendant was examined about 3:45 a.m. June 5. A formal confession was taken by the police about 4:25 a.m., following his preliminary examination. It appears that he was offered assistance of counsel, which he declined, and no question of coercion with regard to his confession is even suggested.

In the meantime, the assistant prosecutor had decided to arrange for the defendant's examination by a psychiatrist, and to this end placed a call to Dr. Schrier, then medical superintendent at the Kalamazoo state hospital. When he received the call at approximately 4:30 a.m., Dr. Schrier agreed to examine the defendant at his (the doctor's) office later that day. After receiving the call, however, the doctor remembered the defendant as having been a former inmate of the hospital and called back to say that he would come to the jail at 8:00 a.m. for the examination.

The assistant prosecutor informed the defendant after the confession was completed that Dr. Schrier would examine him, and the defendant said: "I think maybe I'd better have [a lawyer]."

The defendant was informed that he'd have to wait for the appointment of counsel until a judge was available later that morning.

Dr. Schrier arrived at the jail at 8 o'clock with Dr. Decker, clinical director at the hospital, and

---

[1] CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

the 2 of them proceeded to examine the defendant. The defendant conversed freely with the doctors for about 2 hours.

Later that same day, counsel was appointed and subsequently gave notice of the defense of insanity.

At the trial, by way of rebuttal to the defendant's claim of insanity, Doctors Schrier and Decker, over the objection of the defendant, were allowed to testify that from their examination of him they had formed the opinion that the defendant was sane. Conviction followed.

It is asserted on appeal that this procedure violated the defendant's constitutional rights—to counsel under the Sixth Amendment and not to be a witness against himself under the Fifth.[2]

The defendant intelligently and voluntarily waived his right to an attorney before proceeding with his confession. He was made well aware of his right to remain silent, unlike Danny Escobedo. *Escobedo v. Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977). Upon being informed of the imminence of his examination by the psychiatrists, he changed his mind about a lawyer, saying he believed he had better have one. The stricter demands placed on waiver of counsel by the case of *Miranda v. Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974), need not be considered here because the trial in the instant case was held in 1964. *Johnson v. New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L Ed 2d 882). Thus, the expanded requirements of *Miranda* and later cases that the interrogating must cease at any one of the "critical states" of the proceedings (see *United States v. Wade* [1967], 388 US 218 [87 S Ct 1926, 18 L Ed 2d 1149]), upon the demand of the accused for an attorney, even after previous

---

[2] US Const, Ams 6, 5.

waiver, need not control disposition of the present case.

The case of *Schmerber* v. *California* (1966), 384 US 757 (86 S Ct 1826, 16 L Ed 2d 908), is one dealing with obtaining evidentiary matter from the body of the accused without his consent, and may be distinguished from the present case on that ground. *Schmerber* did not concern a totally exonerating issue advanced by the defense itself. See *Pope* v. *United States* (CA 8, 1967), 372 F2d 710.

Here, the defendant seeks to employ the defense of mental incapacity to perform a crime, so that expert medical opinion becomes essential for both the defendant and for the people.[3]  Knowing of his right to remain silent, the defendant voluntarily talked with the psychiatrists.  His right to freedom from self-incrimination is not violated, as there was no evidence of any adverse testimonial compulsion whatsoever, as there was in *Schmerber*, where the Court finally permitted the nonconsensual evidence of blood samples to be admitted.

The decision of the Supreme Court of New Jersey in the case of *State* v. *Whitlow* (1965), 45 NJ 3 (210 A2d 763), upheld a lower court order authorizing the examination of the defendant by psychiatrists where the defendant was seeking to use the defense of mental incapacity, stating (p 27; 210 A2d 776):

"It is true, of course, that both Federal and State Constitutions give an accused the right to have the assistance of counsel in his defense  *  *  *  A psychiatric examination is simply a necessary preliminary investigatory step to enable the State to decide whether to recommend acceptance of defendant's claim of insanity or to dispute it at trial.

---

[3] For an illuminating discussion of the entire matter of early psychiatric examination, see Sadoff, "Mental Illness and the Criminal Process: The Role of the Psychiatrist", 54 American Bar Association Journal 566 (June 1968).

The limited privilege of the medical expert to inquire about the alleged crime itself, *i.e.,* only when necessary to the formation of an opinion on insanity, the sharply limited purpose for which any statements of the defendant may be used at the trial, provides sufficient safeguards against actual self-incrimination. * * *

"In none of the statutes of the various jurisdictions mentioned in footnote 1 hereof is any provision made for the presence of counsel. [Such statutes permit or require examination of an accused when defense of insanity is raised.] This is worthy of considering as indicating that none of them felt absence of counsel is a factor which might thwart a fair trial. [Citing cases.] Moreover, in many of the reported cases it appears without significant criticism that psychiatric examinations were made prior to appointment of counsel for the defendant, or without the presence of counsel. * * * *Early* v. *Tinsley* (CA 10, 1960), 286 F2d 1, *certiorari denied* (1961), 365 US 830 (81 S Ct 717, 5 L Ed 2d 708); *Hughes* v. *United States* (1962), 113 App DC 127 (306 F2d 287); *Edmonds* v. *United States* (1958), 104 App DC 144 (260 F2d 474); *State* v. *Livingston* (1958), 233 SC 400 (105 SE2d 73); *People* v. *Esposito* (1942), 287 NY 389 (39 NE2d 925)." Also, see *Pope* v. *United States, supra.*

The defendant in the present case was possessed of full awareness of his constitutional rights, alleviating much of the fear of the *Escobedo* Court concerning naive suspects, and he consented *without evidence of any compulsion* to free discussion with the psychiatrists. It may be urged that the above cases were decided prior to *Escobedo,* but this does not countervail the use of these precedents in the present case decided under the limited requirements of *Escobedo* which were fairly met by the people.

Affirmed.

Burns, P. J., concurred with Fitzgerald, J.

T. G. Kavanagh, J. (*dissenting*). Even Larry Lee Ranes is entitled to a fair trial.

To deny a person his right to the effective assistance of counsel and to compel him to incriminate himself is to deprive him of a fair trial.

As I read it, the whole point of *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977) is that unless defendant's request for a lawyer is honored he has been denied the effective assistance of counsel in violation of the 6th Amendment and any incriminatory statement he makes thereafter is deemed to be coerced so as to violate his 5th Amendment rights, and hence may not be used against him.

The interpretation of *Escobedo, supra,* as enunciated in *Miranda*[1] is not limited by *Johnson*[2] to a more narrow retroactivity than the original holding itself. This case clearly falls within the spirit and framework of *Escobedo.*

The importance of *Schmerber*[3] is that it differentiated between testimonial and nontestimonial evidence, holding that compulsion of certain kinds of the latter does not contravene the 5th Amendment while reiterating that compulsion of any of the former does.

The answers and other communications of the defendant here with the examining psychiatrists are patently testimonial and hence within the ambit of the 5th Amendment.

The most impressive aspect of the device used here, to me, is the complete lack of justification for

---

[1] *Miranda* v. *United States* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

[2] *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L Ed 2d 882).

[3] *Schmerber* v. *California* (1966), 384 US 757 (86 S Ct 1826, 16 L Ed 2d 908).

it. If the prosecutor was concerned about the defendant's capacity to stand trial he should have tested it under the statute. This leaves only the subsequently demonstrated desire to anticipate the defense of insanity.

This, indeed, may be laudable if lawful, but if the prosecution's case is perfected in violation of a person's rights, it vitiates the whole process of trial.

I would reverse and remand for a new trial.