PEOPLE *v.* STEVENS

CRIMINAL LAW—EVIDENCE—CONSTITUTIONAL LAW—DUE PROCESS—PRIVILEGE AGAINST SELF-INCRIMINATION—PSYCHIATRIC EXAMINATION.

Admission in evidence of testimony by a doctor who made a psychiatric examination of defendant in a criminal case as to what defendant told him concerning his memory of what happened on the night of the crime *held,* not to violate defendant's privilege against self-incrimination where the statements of defendant at the examination were voluntary (CLS 1961, § 767-.27).

. Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted Division 1 May 8, 1969, at Detroit. (Docket No. 4,394.) Decided June 25, 1969.

REFERENCE FOR POINTS IN HEADNOTE
21 Am Jur 2d, Criminal Law §§ 48, 49, 69, 357, 365.

James Stevens was convicted of forcible rape and robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Emmett S. Long,* for defendant.

Before: HOLBROOK, P. J., and McGREGOR and BRONSON, JJ.

HOLBROOK, P. J. Defendant, James Stevens, was convicted in the recorder's court for the city of Detroit without a jury of the crimes of carnal knowledge of a female over the age of 16 years by force and violence, CLS 1961, § 750.520 (Stat Ann 1954 Rev § 28.788); and robbery armed contrary to CLS 1961, § 750.529 (Stat Ann 1969 Cum Supp § 28.797). Defendant was sentenced to prison terms of life on both counts, to run concurrently.

The record discloses that an armed robbery was committed upon the complainant upon her returning home from work at about 11:15 p.m. on May 14, 1964; immediately thereafter the complainant at gun point was forced to proceed into the alley near her home where she was raped, while her hands were tied behind her.

The defendant was arrested June 26, 1964, and waived examination July 1. On July 20, assigned counsel was appointed and on August 5, 1964, counsel for defendant filed a petition for examination by physicians under CLS 1961, § 767.27 (Stat Ann 1963 Cum Supp § 28.967). The petition was granted and a sanity commission was appointed by the court

on August 20, 1964, consisting of Dr. Albert J. Wallaert, Dr. Robert C. Behan, and Dr. Louis F. Lawrence. After a hearing, the court, on September 16, 1964, committed defendant to the State hospital at Ionia. It was disclosed at the trial that the main reason defendant was found insane or psychotic was because he claimed amnesia, *i.e.,* no knowledge of the happenings of the day of the crime. His attorney pleaded inability to have him assist in his defense. On February 18, 1966, the medical superintendent of Ionia State Hospital certified the defendant was sane and competent to stand trial. Hon. Gerald W. Groat, judge of the recorder's court, on February 23, 1966, ordered defendant returned by the sheriff of Wayne county. Judge Groat then referred defendant to Dr. Wallaert to ascertain if he was able to stand trial. This examination took place in April, 1966, and the report was in the affirmative. On June 16, 1966, counsel for defendant filed notice that defendant would interpose the defense of insanity and listed the 3 members of the sanity commission as witnesses. Trial was held on February 27 and March 3 and 17, 1967. The matter was then adjourned until a transcript of the proceedings was furnished the court. On April 21, 1967, the defendant was found guilty on both counts.

At the trial, after the complaining witness, an investigating policewoman and a policeman and a detective of the Detroit police department had testified, the people asked permission to indorse Dr. Wallaert's name on the information and his name was indorsed after counsel for the defendant stated he had no objection. Dr. Wallaert was called and testified at length concerning the 1964 and 1966 interviews with defendant. The gist of his testimony was to the effect that in his opinion, defendant when he claimed amnesia in 1964 was not sincere

and his claimed amnesia was feigned and further that defendant malingered at Ionia for some time before "regaining" his memory. Regarding the 1966 interview Dr. Wallaert testified, among other things, the following:

"Well, when he [defendant] got back from Ionia he states he is better now and that he admits remembering sexually assaulting and robbing the complainant."

This answer was admitted over objection of defendant's counsel.

The defendant called Dr. Lawrence of the sanity commission, and also Dr. Jacob Neglius and Dr. Jose Mejia of the medical staff at Ionia State Hospital. They testified at length and the records of the hospital were admitted with defense counsel's consent. The defendant himself took the stand and testified.

There was considerable evidence introduced concerning the condition of the mind of the defendant as of the date of the crime. There was evidence that defendant at Ionia State Hospital admitted knowledge of the crime so that he could get out of Ionia, i.e., he was told by other patients that this was the only way he could be released from the hospital. Other evidence was to the effect that he had been reading a book on psychiatry and insanity and that his reported hearing voices and so forth had been prompted by reading this book, but that in fact he had heard no voices. There was testimony to the effect that he did not use a gun but fashioned a comb to resemble a gun, and that he admitted his participation in the crime to the doctors at Ionia. All of this testimony bore on the defendant's sanity or insanity which was definitely contested.

The defendant raises a single question which we restate as follows: *Did the trial court commit error in permitting the member of the sanity commission, Dr. Wallaert, to testify as to what defendant told him upon defendant's return from Ionia State Hospital concerning his memory of what happened on the night of the crime?*

The statute under which the defendant petitioned for a sanity commission[1] does not prohibit a member of the commission from testifying in the main case when and if defendant is tried. Defendant asserts that the statements made to a doctor under this statute are protected by provisions of the constitution under the self-incrimination privilege.

In 8 Wigmore on Evidence, (McNaughton Rev), § 2265, pp 395–399, it is stated as follows:

"The next four varieties of situations are more difficult but still without the [self-incrimination] privilege. They include cases in which the evidence can be obtained only if the person cooperates; but even here, except in the extraordinary case, no communication of knowledge is compelled.

"(7) Requiring a suspect to speak for identification.

"(8) Requiring a suspect to write for identification.

"(9) Requiring a suspect to appear in court, stand, assume a stance, walk or make a particular gesture.

"(10) Requiring a suspect to submit to an examination for sanity."[2]

---

[1] CLS 1961, § 767.27 (Stat Ann 1954 Rev § 28.967).

[2] Federal: *Fouquette* v. *Bernard* (CA 9, 1952), 198 F2d 860 (habeas corpus seeking to have set aside a conviction of murder in a state court; after arraignment and before he had counsel, physician examined defendant as to his insanity and testified with reference to his conversation with him; objection on ground of self-incrimination overruled).

California: *People* v. *Bundy* (1914), 168 Cal 777 (145 P 537) (murder; examination of the accused in jail by two physicians; defendant voluntarily answered questions and hence waived privilege);

In the case of *People* v. *Spencer* (1963), 60 Cal 2d 64 (31 Cal Rptr 782, 383 P2d 134) where under facts similar to those present in this case (except that in *Spencer* the charge was murder and the notice of defense of insanity was withdrawn before trial), the court stated in part as follows (pp 82–84):

"Defendant attacks on still another ground the admissibility of quoted testimony (*ante,* fn. 10) of Dr. George W. Abe relating to statements made by defendant in the course of the psychiatric examination on his plea of not guilty by reason of insanity. Defendant contends that it was error to allow Dr. Abe to so testify on the guilt phase, in view of the fact that defendant had withdrawn his insanity plea at the start of trial. Defendant argues that the admission of such testimony 'tends to vitiate' the purpose of Penal Code section 1027 (*post,* fn. 12) in that 'the possibility of a free and candid interview with the alienist is impaired' if the defendant knows that his statements in that interview may be introduced on the guilt phase of the subsequent trial; secondly, defendant argues that the admission of this testimony violates his privilege against self-incrimination. Each of these arguments, however, has been recently considered and rejected by this court (*People* v. *Ditson* [1962], 57 Cal 2d 415, 447, 448 [20 Cal Rptr 165, 369 P2d 714]; *People* v. *Combes* [1961], 56 Cal 2d 135, 149, 150 [14 Cal Rptr 4, 363 P2d 4]) and no persuasive reason is suggested for disturbing the conclusions there reached. Thirdly, defendant advances the argument that the admission of such testimony 'would tend to create an invidious discrimination against indigents solely because of their poverty' and hence violates the Equal Protection Clause (citing such cases as *Griffin* v. *Illinois* [1956], 351 US 12, 16 [76 S Ct

*People* v. *Strong* (1931), 114 Cal App 522 (300 P 84) (statute authorizing medical examination of an accused pleading insanity, provided he consents, held not a violation of the privilege).

585, 100 L Ed 891, 55 ALR2d 1055], and *Douglas* v. *California* [1963], 372 US 353 [83 S Ct 814, 9 L Ed 2d 811]). Defendant points out that admissions of an accused to a physician privately employed by his counsel for the purpose of examining him in preparation for trial are held to be protected by the attorney-client privilege (*Jones* v. *Superior Court of Nevada County* [1962], 58 Cal 2d 56, 60, 61 [22 Cal Rptr 879, 372 P2d 919]); on this basis defendant argues that he was denied 'equal protection' because he had insufficient funds to hire such a physician of his own and hence take advantage of that protection. But by its terms section 1027 operates in the same manner whether the defendant be rich or poor, because in either event it compels the use of *court-appointed* alienists when a plea of not guilty by reason of insanity is entered. Obviously, the statute seeks the relevant truth—and makes it equally available—as to rich and poor alike. Defendant attempts to overcome this flaw in his position by further proposing that 'Had defendant been a man of wealth and means, he *would have presumably* not entered a plea of insanity at all; for his privately employed psychiatrist *would already, presumably,* have reported to employed counsel that there was no basis for such a plea.' (Italics added.) Whether counsel might nevertheless, in the proper exercise of the discretion which evolves from his responsibility, have felt it advisable to enter, and further explore the tenability of, such a plea would still appear conjectural. We take judicial notice of the fact that the plea of not guilty by reason of insanity has been more often entered than sustained. An established practice of the trial courts such as here challenged, grounded on an enactment of the legislature and sanctioned by our decisions, will not be struck down on rank speculation alone. (*Cf. In re Cregler* [1961], 56 Cal 2d 308, 313 [14 Cal Rptr 289, 363 P2d 305]). Defendant's argument, in essence, amounts to no more than an unwarranted criticism of the manner in which his trial

counsel conducted this aspect of the defense."
(Emphasis supplied in *Spencer.*)

This Court held in *People* v. *Ranes* (1968), 13
Mich App 182, that a court-ordered psychiatric
examination does not violate defendant's right to
counsel or his privilege against self-incrimination.

In *People* v. *Woody* (1968), 380 Mich 332, the
Court did not rule on the precise question that is
presented in the instant case because in that case
the question was not raised on trial.

Under the facts in the present case the defendant
was always cooperative and never objected to being
examined or questioned. This was testified to by
Dr. Wallaert and verified by the defendant himself
as appears in the record, *viz.*:

"*The Court:* I am just thinking—when you were
questioned by the—by Dr. Wallaert and the psy-
chologist in 1966, did you make any objection at
that time to being questioned?

"*A.* No, sir, I didn't.

"*The Court:* You were willing to be questioned
at that time?

"*A.* Yes, sir."

It is apparent from a careful reading of the record
that the defense in this case was insanity and that
all of the facts were fully presented by both sides
touching that issue. The defendant was willing to
be questioned as is evidenced by his petition and
request to the court for the appointment of the
sanity commission. Such a commission would be
without value without his being fully examined as to
all the matters bearing upon his sanity or insanity.
He never personally objected. However, at trial his
counsel did object to certain parts of the examina-
tion results. These were evidently deemed by the
attorney for defendant to harm him. The evidence
to be derived from such examinations should not be

restricted to that which might benefit a defendant. Having determined that the statements of the defendant at the examination were voluntary, we conclude that their admission violates no constitutional rights of the defendant.

Defendant requests that we extend the guidelines set forth in *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974) to statements made by a defendant to a medical examiner pursuant to appointment of a commission to determine sanity. In the absence of a United States Supreme Court ruling making *Miranda, supra,* applicable, we are constrained to deny the request of defendant.

Affirmed.

All concurred.