PEOPLE v PLUMMER

1. CRIMINAL LAW—INSANITY AS DEFENSE—JUVENILES—JURISDICTION—
   WAIVER EXAMINATION—DOCTOR-PATIENT PRIVILEGE.

   A psychologist who examined a criminal defendant at the request
   of a juvenile court for the purpose of determining whether
   jurisdiction should be waived to allow the defendant to be tried
   as an adult is not barred by the doctor-patient privilege from
   testifying at trial as to that defendant's sanity should that
   defendant choose to interpose an insanity defense.

2. CRIMINAL LAW—STATUTES—DIAGNOSTIC REPORTS—MENTAL COMPE-
   TENCE—TESTIMONY AT TRIAL.

   The use of diagnostic reports and recommendations made by a
   person evaluating the mental competence of a defendant to
   stand trial for a criminal offense is limited by statute to the
   competency hearing alone; this does not prohibit the person
   who conducts the competency examination from later testifying
   at trial (MCLA 767.27a[4]).

3. CRIMINAL LAW—INSANITY AS DEFENSE—EXPERT WITNESSES—INSAN-
   ITY TEST—APPEAL AND ERROR—HARMLESS ERROR—DIFFERENT
   SOURCES.

   Any error which may have been committed by a trial court in
   allowing a prosecution expert witness to state to the jury what
   he believed to be the Michigan test for the defense of insanity,
   over the objection of defense counsel that only the court could
   state the test to the jury, was harmless where the witness gave
   a substantially accurate description of the proper test for
   insanity and the jury heard the test stated during the trial
   from several different sources, including the court itself.

Appeal from Oakland, Robert L. Templin, J.
Submitted October 8, 1975, at Lansing. (Docket
No. 14946.) Decided November 12, 1975. Leave to
appeal applied for.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Criminal Law §§ 48, 65, 69, 74.

Keith Plummer was convicted of kidnapping, rape, assault with intent to murder and unlawfully driving away an automobile. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Campbell, Kurzman, Leitman, Plunkett & Roggenbaum,* for defendant.

Before: QUINN, P. J., and D. E. HOLBROOK and D. F. WALSH, JJ.

D. E. HOLBROOK, J. On September 25, 1970, defendant Keith Plummer was found guilty by an Oakland County jury of kidnapping, MCLA 750.349; MSA 28.581; rape, MCLA 750.520; MSA 28.788; assault with intent to murder, MCLA 750.83; MSA 28.278; and unlawfully driving away an automobile, MCLA 750.413; MSA 28.645. He was sentenced to serve 40 to 60 years on each of the three capital charges and 4 to 5 years on the charge of unlawfully driving away an automobile. That conviction was reversed by this Court in *People v Plummer,* 37 Mich App 657; 195 NW2d 328 (1972). On June 27, 1972, defendant was again found guilty of all four offenses and given the same sentences. From that conviction defendant brings this appeal.

The facts in this case are particularly sordid even for cases involving similar crimes, but may be quite easily summarized. At trial, there was ample, unrefuted evidence to show that defendant abducted his 54-year-old victim from a parking lot

near downtown Detroit. Using his victim's car, defendant forced her, at knife point, to accompany him to a spot several miles from the city. Upon arriving at a secluded spot in a rural area, defendant parked the car and informed his victim that he was going to rape her. He then took his victim to some bushes a short distance from the road where he did rape her. Because of her age, the rape itself resulted in serious injury to the victim. After raping her, defendant stabbed his victim several times in the neck and abdomen. He then left the scene in the victim's car. The victim, who had passed out during the attack, regained consciousness and made her way back to the road where she found help.

Defendant was a juvenile at the time of the offense, but juvenile court jurisdiction was waived so that defendant could be tried as an adult. Defendant's waiver to circuit court was valid, as it complied with JCR 1969, 11.

On this appeal, defendant raises several allegations of error, only two of which we feel merit discussion.

At trial, defendant did not attempt to contest the fact that the crimes had been committed or that he had committed them. Rather, defendant entered a defense of insanity. Defendant called several witnesses who gave testimony which was favorable to his insanity defense. The prosecution called two witnesses in rebuttal of defendant's insanity defense. Defendant makes allegations of error concerning the testimony of both of the prosecution's rebuttal witnesses. Defendant claims it was reversible error to allow the testimony of a juvenile court psychologist who had interviewed defendant to assist the juvenile court in deciding whether or not to waive jurisdiction. Before the

psychologist, Mr. Sokolov, was allowed to testify at trial, defense counsel objected on the basis of confidentiality and public policy. It was argued that since Mr. Sokolov had seen the defendant pursuant to proceedings in juvenile court, any communication was privileged and the introduction of evidence based on it would be contrary to public policy. Defendant's "privileged communication" argument, based on MCLA 338.1018; MSA 14.677(18), is effectively answered by the case of *People v Bol,* 23 Mich App 244; 178 NW2d 516 (1970). Defendant cites this case in an attempt to distinguish it, but fails to do so. In *Bol, supra,* 23 Mich App at 250; 178 NW2d 519, this Court ruled on the applicability of MCLA 338.1018; MSA 14.677(18), to the testimony of a psychologist who had examined the complaining witness at the request of the juvenile court for the purpose of assisting the juvenile authorities:

"This Court concludes that there is no basis for holding that a doctor-patient privilege exists, since before such a finding, this Court must conclude that there did exist a true doctor-patient relationship. Here, the complainant was ordered by the court to submit to the doctor's examination, with information thus obtained to be used by the authorities in the disposition of the complainant."

That same reasoning applies to this case and compels us to reach the same result. Defendant's reliance on MCLA 338.1018; MSA 14.677(18) is misplaced.

Defendant bases his public policy argument for excluding Mr. Sokolov's testimony upon an analogy between a psychological evaluation undertaken for the benefit of the juvenile court and a competency hearing in circuit court pursuant to

MCLA 767.27a; MSA 28.966(11). Defendant's analogy is of no help to him here. MCLA 767.27a(4); MSA 28.966(11)(4) provides:

"Upon receipt of the diagnostic report and recommendations the sheriff shall immediately return the defendant to the committing court and the court shall immediately hear and determine the issue of competence to stand trial. *The diagnostic report and recommendations shall be admissible as evidence in the hearing, but not for any other purpose in the pending criminal proceedings."* (Emphasis supplied.)

This section of the statute concerns itself only with the diagnostic report and recommendations made by the person who evaluates a defendant pursuant to this statute. It does not make any mention of the admissibility of actual testimony as to the sanity of the defendant at a later trial should the defendant put forth an insanity defense. But for some reason, in reliance upon that section of the statute, it has sometimes been assumed that the person performing the evaluation for purposes of determining competency to stand trial could not testify as to defendant's sanity should the defendant interpose an insanity defense. See *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), *People v Schneider,* 39 Mich App 342; 197 NW2d 539 (1972). We do not believe such a view to be the product of well-reasoned analysis. Rather, we agree with Justice LEVIN who, concurring in *People v Garland,* 393 Mich 215, 221–222; 224 NW2d 45, 47 (1974), said:

"In Part I we address the contentions of the parties revolving around the previously quoted words of the *Martin* opinion and conclude that this statute, limiting the use of diagnostic report and recommendations, does not—contrary to the declaration in *Martin*—prohibit a

psychiatrist who conducts a competency examination from testifying at trial."

Justices T. G. KAVANAGH and J. W. FITZGERALD concurred with Justice LEVIN, and the Court was unanimous in affirming the defendant's conviction, the other justices deciding they need not face the subject issue, in order to affirm.

Even assuming the validity of such pre-*Garland* decisions as *Martin* and *Schneider* as they construe MCLA 767.27a(4); MSA 28.966(11)(4), defendant's analogy is still of no help to him. This is for the simple reason that there is no juvenile code counterpart to MCLA 767.27a(4); MSA 28.966(11)(4). In the absence of such analogous statute, we see no reason why a psychologist who interviews a defendant in order to aid the juvenile court in determination of the question of waiver to circuit court cannot testify as to that defendant's sanity, should the defendant later interpose an insanity defense.

Defendant next asserts that it was error for the prosecution's other rebuttal witness to be allowed to state what he believed to be the Michigan test for a defense of insanity. Before the expert witness in question was allowed to answer, defense counsel objected:

"I'm going to object, your Honor. I don't believe this witness can testify—that he can state what the test for insanity is. It has to come from the court. I think Mr. Roether can put questions to him phrased around the Michigan test for insanity. He's not a lawyer and only the court can tell the jury what the law or test is for insanity. I object, it calls for legal conclusions and it is improper."

The objection was overruled and the witness was allowed to testify, whereupon he proceeded to give

a substantially accurate description of the Michigan test for insanity. Defendant did not claim that the witness misstated the test. Nor did defendant argue that the witness was testifying to a legal conclusion, and the witness never did so testify. Defendant only objected to the statement of the test by the witness. We hold that if it was indeed error for the psychiatrist, who had been qualified as an expert in forensic psychiatry, to state the Michigan test for insanity, that such error was harmless. The jury in this case heard the test for insanity from several different sources. In the process of conducting voir dire the trial court stated the "Michigan test for insanity" twice and asked if any juror would be unable to apply this test. In his opening statement, defense counsel stated:

"Now, let me stop right here. At the beginning of the case, because I'm allowed during my opening statement to give you my theory. of the law, what are we talking about when we're talking about criminal insanity? Michigan recognizes—and I'm giving you my theory, the court will instruct you what the law is—but basically Michigan recognizes a two-pronged test, they are the alternative, not both, you have to find one or the other. The first one is at the time of the offense did the defendant know the difference between right and wrong. Now, if you find that he did know the difference between right and wrong and the answer is 'yes,' then, of course, he's not insane. No one is insane under that definition. What you must go to then next is that if he did know the difference between right and wrong, did the defendant have the power, the will power to resist doing the act with which he is charged. Now, that is an alternative test, ladies and gentlemen of the jury and it is this second test upon which the defendant basically relies to substantiate his defense of insanity."

Defense counsel also said of one of his experts

that: "Dr. Tanay will testify that on or about March 31, 1970, *in his expert medical opinion, Keith Plummer was legally insane."* (Emphasis supplied.) Later in his opening argument he again stated that his expert witness would testify that defendant "was legally insane and therefore not criminally responsible for any action whatsoever". In his closing argument, defense counsel stated:

"Now, I'm saying to you that Drs. Tanay and Kafi stated that on March 31, 1970 the day that Keith Plummer is charged by the people that he committed these crimes, that in their expert psychiatric opinion he was unable to help himself he was unable to resist doing what he did, and I'm saying to you that I believe his Honor will tell you that *that is a test for legal insanity* and if you have so much as a reasonable doubt that that condition was present in Keith Plummer on March 31, 1970 the law will not let you find him guilty and you have sworn to follow the law." (Emphasis supplied.)

The jury was instructed that they were not bound by the opinion of any one or all of the witnesses but were free to reject part or all of the testimony. Finally, the trial court gave extensive attention to the test for insanity in his instructions. Counsel for both the people and the defendant told the jury to take the law on insanity from the trial court and to pay special attention to it.

In light of the foregoing we are able to say with certainty that the admission of the objected-to testimony was completely harmless to the defendant in this case. The test was stated several times by defense counsel during the course of the trial. The jury was properly instructed. The balance of the testimony given by the prosecution's witness was very harmful to defendant, but it was properly admissible. The only question before us is

whether the objected-to testimony was erroneously admitted and if so whether it was reversible error. We have decided that even if erroneously admitted, the error was harmless. MCLA 769.26; MSA 28.1096.

We have examined defendant's other allegations of error and found them to be without merit.

Affirmed.